J-A24037-19

2019 PA Super 335

BRUCE BURRELL : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
STREAMLIGHT, INC. : No. 908 EDA 2019

Appeal from the Order Entered February 19, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): No. 2016-30144

BEFORE: BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

OPINION BY COLINS, J.: **FILED NOVEMBER 07, 2019**

This is an appeal from an order granting summary judgment in favor of

the defendant in a work-place personal injury action on the grounds that the

action was barred by the exclusive remedy provision of Section 303(a) of the

Workers' Compensation Act (WCA), 77 P.S. § 481(a). For the reasons set

forth below, we affirm.

Bruce Burrell (Plaintiff) was injured on the premises of Streamlight, Inc.

(Defendant) on January 29, 2015 when he fell during his work shift while

disposing of trash in the trash compactor at Defendant's facility. Complaint

¶¶9, 13-14; Burrell Dep. at 47-53, 66-67, 82-83. Plaintiff was a temporary

worker hired by Aerotek, Inc. (Aerotek), a recruiting agency, and was placed

by Aerotek to work for Defendant as a temporary worker at Defendant's

_____

[*] Retired Senior Judge assigned to the Superior Court.

facility. Complaint ¶¶4-6; Burrell Dep. at 26-32. Plaintiff's injury occurred in the course and scope of his employment and he has received workers' compensation benefits for his injury. Plaintiff's Answers to Defendant's Interrogatories Nos. 7, 29.

On December 27, 2016, Plaintiff filed a negligence action against Defendant alleging that his injuries were caused by a dangerous condition of Defendant's facility. Defendant in its answer to the complaint pleaded as an affirmative defense that it was immune from suit under the WCA because Plaintiff was acting as Defendant's employee or borrowed servant at the time of the accident. Answer and New Matter ¶¶27-28. On November 28, 2018, following the completion of discovery, Defendant moved for summary judgment on two grounds, 1) that it was immune from tort liability under the WCA and 2) that Plaintiff could not prove negligence. The trial court granted Defendant's motion for summary judgment on the ground that Defendant was Plaintiff's employer under the borrowed employee doctrine and was therefore immune under the WCA. This timely appeal followed.

Plaintiff presents one issue for our review:

Did the Trial Court improperly grant Summary Judgment where genuine issues of material fact existed as to the nature of the relationship between the Appellant's actual employer and the Appellee, rendering the Appellee ineligible to assert Immunity under the Pennsylvania Workmen's Compensation Act?

Appellant's Brief at 6. Our standard of review of the trial court's grant of summary judgment is *de novo* and the scope of review is plenary. ***American Southern Insurance Co. v. Halbert***, 203 A.3d 223, 226 (Pa. Super. 2019).

Section 303(a) of the WCA provides in relevant part:

The liability of an employer under [the WCA] shall be exclusive and in place of any and all other liability to such employes [*sic*], his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death . . . .

77 P.S. § 481(a). Except in limited circumstances not present here, an employer is therefore immune from tort liability for injuries suffered by its employees that are compensable under the WCA. ***Soto v. Nabisco, Inc.***, 32 A.3d 787, 790-91 (Pa. Super. 2011); ***O'Donnell v. R.M. Shoemaker & Co.***, 816 A.2d 1159, 1162 (Pa. Super. 2003).

Under the borrowed employee doctrine, where a worker employed by one company is furnished by that company to perform work for another company, the latter company is his employer under the WCA if it has the right to control his work and the manner in which the work is done. ***JFC Temps, Inc. v. WCAB (Lindsay)***, 680 A.2d 862, 864 (Pa. 1996); ***Gardner v. MIA Products Co.***, 189 A.3d 441, 444 (Pa. Super. 2018); ***Mullins v. Sun Co.***, 763 A.2d 398, 400 (Pa. Super. 2000); ***Wilkinson v. K-Mart***, 603 A.2d 659, 661 (Pa. Super. 1992). The test for whether a company is the worker's employer under the borrowed employee doctrine is well established:

**The test for determining whether a servant furnished by one person to another becomes the employee of the person**

> **to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done but also to the manner of performing it. The entity possessing the right to control the manner of the performance of the servant's work is the employer, irrespective of whether the control is actually exercised.** Other factors which may be relevant include the right to select and discharge the employee and the skill or expertise required for the performance of the work.  The payment of wages may be considered, but is not a determinative factor. Although the examination of these factors guides the determination, each case must be decided on its own facts.

*JFC Temps, Inc.*, 680 A.2d at 864 (citations omitted) (emphasis added); *see also Gardner*, 189 A.3d at 444; *Mullins*, 763 A.2d at 400.

A company that is an injured worker's employer under the borrowed employee doctrine is liable for payment of workers' compensation benefits for his work injuries, *JFC Temps, Inc.*, 680 A.2d at 866, and is immune from tort liability for work injuries.  *Gardner*, 189 A.3d at 444; *Mullins*, 763 A.2d at 400-01; *Wilkinson*, 603 A.2d at 660-63.  Whether a company is an injured worker's employer under the borrowed employee doctrine under a given set of facts is a question of law.  *JFC Temps, Inc.*, 680 A.2d at 864; *Mullins*, 763 A.2d at 399 n.3; *Wilkinson*, 603 A.2d at 661.  If there is conflicting evidence as to the direction, supervision or control of the work, there are disputes of material fact and summary judgment cannot be granted. *Gardner*, 189 A.3d at 444-47 (reversing summary judgment where there was evidence that both staffing company and company where work was done had supervisors on site who instructed workers); *Shamis v. Moon*, 81 A.3d 962, 965-67, 971-73 (Pa. Super. 2013) (reversing summary judgment where there

was evidence that defendant supervised plaintiff's work, but was also evidence that other company that paid plaintiff was required by contract to provide all supervision of plaintiff's work). Summary judgment may properly be granted in favor of the defendant on grounds of WCA immunity, however, where the facts concerning supervision and control of the plaintiff's work are undisputed and show that the defendant was the entity that had the right to supervise and direct the plaintiff's work. *Mullins*, 763 A.2d at 400-01; *Wilkinson*, 603 A.2d at 660-63; *English v. Lehigh County Authority*, 428 A.2d 1343, 1349-50, 1358 (Pa. Super. 1981).

On Defendant's motion for summary judgment, the parties submitted to the trial court the contract between Aerotek and Defendant under which Plaintiff was assigned to Defendant and Plaintiff's deposition testimony concerning his employment and his work at Defendant's facility.

Aerotek's contract with Defendant[1] provided that Plaintiff and the other personnel that Aerotek supplied to Defendant were paid by Aerotek and that all personnel supplied by Aerotek were employees of Aerotek, not Defendant. Aerotek-Streamlight Personnel Agreement ¶¶1(c), 4(b), 5(a), 5(c), 7(a). The contract stated that "[n]othing in this Agreement shall be regarded as creating

---

[1] In the trial court, Plaintiff disputed whether this contract was adequately authenticated, but submitted it and relied on it in his summary judgment response. In his arguments in this appeal, Plaintiff does not dispute the authenticity of the contract or contend that the trial court erred in considering it. Appellant's Brief at 16-20.

- 5 -

any relationship, whether as employer-employee, joint employer, as a joint-venture, partner or shareholder between the parties or between Streamlight and the Personnel." *Id.* ¶5(b). Aerotek was responsible for withholding and paying taxes for those employees and for providing workers' compensation insurance that included Defendant as an alternate employer. *Id.* ¶¶5(c), 6(c).

Aerotek's contract with Defendant, however, also provided that "[a]ll work and services to be performed by the Personnel shall be performed solely at Streamlight's premises under the technical management and supervision of Streamlight." Aerotek-Streamlight Personnel Agreement ¶1(b). Under the contract, Defendant could terminate an individual's work at its facility. *Id.* ¶2 (providing that Aerotek "shall immediately cease supplying any individual upon the request of Streamlight"). The contract provided that Aerotek would advise the personnel that it supplied that "all scheduling, requests for leave or other accommodations must be made solely and directly to and with Aerotek." *Id.* ¶1(c) (unnecessary capitalization omitted).

Plaintiff testified that Defendant set his hours and job duties and where he would be performing his work. Burrell Dep. at 32-33, 36-37, 43. Defendant interviewed Plaintiff and made the decision as to the job he would do before Aerotek assigned him to Defendant. *Id.* at 26-31. Plaintiff further testified that his work was supervised by Defendant and that employees of Defendant showed him how to do his assigned work and answered any questions about the work. *Id.* at 33-35, 37-38, 42. Plaintiff testified that

there were no Aerotek supervisors at Defendant's facility, and that he did not have any significant interaction with Aerotek while working at Defendant's facility. *Id.* at 35-36, 42. Plaintiff communicated with Defendant, not Aerotek, concerning his hours. *Id.* at 36, 38-39, 40-43.

This undisputed evidence established that while Aerotek hired and paid Plaintiff, Defendant, and not Aerotek, had the right to control Plaintiff's work and the manner in which it was performed. Defendant as a matter of law was therefore Plaintiff's employer under the WCA and immune from personal injury tort liability. Indeed, our courts have specifically addressed the situation presented here and have held that under the borrowed employee doctrine, a worker hired and paid by an agency that provides workers to other companies is the employee of the entity to which he is assigned to work where that latter entity supervises and directs his work. *JFC Temps, Inc.*, 680 A.2d at 863-66; *English*, 428 A.2d at 1346, 1349-50.

In *JFC Temps, Inc.*, our Supreme Court held that a truck driver was the employee of the company to which he was assigned, even though he was hired and paid by a temporary employment agency and reported to that agency when he was late or could not work, because the company to which the driver was assigned told him what truck to use and the destination to which he was to drive, decided whether his work was satisfactory, and could request a replacement if dissatisfied with his work, and no representative of the employment agency was ever at facility where driver worked. 680 A.2d

at 863-66.  In **English**, this Court held that a worker who died on the job was an employee of the government entity to which he was assigned, even though he was hired and paid by an employment agency, workers' compensation insurance and taxes were paid by the employment agency, and the employment agency had exclusive right to assign workers to its customers and remove them, because the government entity to which the worker was assigned directed him concerning the work that he was to perform and employment agency did not direct how work was to be performed and had no supervisory personnel at government entity's facilities.  428 A.2d at 1346, 1349-50.  This case is indistinguishable from **JFC Temps, Inc.** and **English**.

Plaintiff argues that the borrowed employee doctrine does not apply because he was injured taking out trash and that Defendant directed and controlled only the work for which he was placed at Defendant, assembly and packaging of flashlights.  This argument fails for several reasons.  Taking out the trash was in fact within Plaintiff's work duties for Defendant, as Plaintiff admitted that Defendant had previously directed him to take out trash as part of his job duties.  Burrell Dep. at 24-25, 49; Plaintiff's Answer to Defendant's Interrogatory No. 8.  Moreover, Plaintiff admitted that he was performing work at Defendant's facility during work hours when he was injured and was within the course and scope of his employment at the time of the accident.  Plaintiff's Answers to Defendant's Interrogatories Nos. 7, 13(a); Burrell Dep. at 48-49, 82-83.  Defendant therefore clearly had the right to direct and control the

work that Plaintiff was performing when he was injured. Aerotek-Streamlight Personnel Agreement ¶1(b). There was no claim that Plaintiff was operating under Aerotek's direction or supervision in taking out the trash.

Plaintiff also argues that the contract between Aerotek and Defendant creates a genuine dispute of material fact because it provides that Plaintiff was an employee of Aerotek, not Defendant. The test, however, is whether Defendant had the right to direct and control Plaintiff's work and the manner of its performance, not the nomenclature used by the parties. *JFC Temps, Inc.*, 680 A.2d at 864; *Wilkinson*, 603 A.2d at 662 (company to which truck driver was assigned was employer under WCA and immune from personal injury liability because it controlled driver's work and manner of performance, even though its contract with the company that assigned the driver to it expressly provided that drivers were employees of the assigning company); *English*, 428 A.2d at 1349-50, 1354 (workers' characterization of employment agency as employer did not control issue of which entity was employer under WCA). There was no conflict or ambiguity in the evidence on the issue of which company controlled the work and the manner of its performance. Both the contract and Plaintiff's testimony are clear that Defendant, not Aerotek, had the right to control and direct Plaintiff's performance and in fact controlled and directed his work and how it was to be

performed. Aerotek-Streamlight Personnel Agreement ¶1(b); Burrell Dep. at 32-38, 42-43.[2]

Because the undisputed facts established that Defendant was Plaintiff's employer under the WCA and was therefore immune from tort liability for Plaintiff's injury, we affirm the trial court's grant of summary judgment in Defendant's favor.

Order affirmed.

---

[2] To the extent that Plaintiff also contends that the trial court erred in granting summary judgment without allowing Plaintiff additional time for discovery to respond to the motion, Appellant's Brief at 18-20, that argument is without merit. A trial court is not required to grant a party additional time for discovery before ruling on a summary judgment motion where the parties have already had a reasonable time for discovery and the party opposing summary judgment has not demonstrated that it was prevented from timely completing the necessary discovery. *Fort Cherry School District v. Gedman*, 894 A.2d 135, 140 (Pa. Super. 2006) (summary judgment was not premature where the party opposing summary judgment had 15 months to conduct discovery); *Reeves v. Middletown Athletic Association*, 866 A.2d 1115, 1124 (Pa. Super. 2004) (no error in ruling on summary judgment without additional discovery where plaintiff already had at least one year to conduct discovery). Defendant filed its answer pleading the defense of immunity under the WCA on February 24, 2017. The discovery deadline in this case was November 13, 2018, and Defendant filed its summary judgment motion on November 28, 2018, after the completion of discovery. Plaintiff has not set forth any reason why he could not complete all necessary discovery on Defendant's immunity defense in the period of more than one year and eight months that he already had before discovery ended and the motion for summary judgment was filed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/19